[Civil No. 1609.   Filed March 5, 1918.]

[171 Pac. 130.]

RAYMOND R. FARMER (Plaintiff) and the J. W. DORRINGTON INVESTMENT COMPANY (Intervener), Appellants, v. E. W. DAHL and O. & C. CONSTRUCTION COMPANY, a Corporation, Appellees.

1. MUNICIPAL CORPORATIONS—PAVING IMPROVEMENT—ABANDONMENT BY COUNCIL.—Under Yuma City Charter, article 10, section 6, providing that the city council shall determine its own rules of procedure, and article 11, section 1, providing that the mayor shall sign the minutes of the council's meetings after they have been entered by the recorder and approved by the council, where the city council had hearing on the protest of property owners liable to assessment · for paving work, and, as shown by the motion as entered by the clerk, motion was made and unanimously carried abandoning the work, but at the next regular meeting of the council, a week later, and before the minutes of the prior meeting were approved by the council and signed by the mayor, they were amended to 'show that the work was not abandoned, but that the bid of a construction company was rejected and its cash deposit returned, the city council did not abandon the proposed work, thereby losing jurisdiction, the first action of the council having been limited to rejection of bids, as expressed in its amended minutes.

[As to conclusiveness of municipal records, and power of municipality to amend, see note in 13 Am. St. Rep. 550.]

2. MUNICIPAL CORPORATIONS—PAVING IMPROVEMENT—CHANGING GRADE OF STREET—DAMAGE TO ABUTTING OWNERS—RIGHT TO COMPLAIN.— Taxpayers seeking to enjoin execution. of a paving contract may not complain that the work will materially change the established grade of street, where they themselves are not owners abutting on such street.

3. MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — OMISSION OF LOTS BELONGING TO CITY—STATUTE.—By Civil Code of 1913, paragraph 1958, the total expense of all work done shall be assessed on lots lying within the limits of the assessment district without regard to lots, pieces, or parcels of land omitted because owned by the federal government, state, or city, and used in the performance of any public function.

4. MUNICIPAL CORPORATIONS—PAVING IMPROVEMENT—PAYMENT BY CITY —STATUTE.—Under Civil Code of 1913, paragraphs 1953–1977, a city's obligation to pay for a specific paving improvement on the ground that its property is benefited does not accrue until after the work, under the contract, has been completed and accepted, and it is not made a condition precedent that the city shall have on hand funds to meet the obligation at the time of incurring it; paragraph 1958 simply requiring that when the money is paid it shall be paid out of the city's general fund, unless otherwise designated in the resolution of intention.

5. MUNICIPAL CORPORATIONS—PAVING IMPROVEMENT—SPECIFICATION OF PATENTED PAVING—STIFLING COMPETITION—STATUTE.—A city's contract for a paving improvement was not fraudulent and void as stifling competition because specifying "Warrenite" patented paving, the statute providing in Civil Code of 1913, paragraph 1974, subdivision 4, that patented material might be used, while the owners of the patented pavement called for had filed a license agreement with the city recorder agreeing to furnish the pavement to all bidders on equal terms.

APPEAL from a judgment of the Superior Court of the county of Yuma. Frank Baxter, Judge. Affirmed.

Mr. Clement H. Coleman, Mr. C. A. Lindeman, and Messrs. Wupperman & Wupperman, for Appellants.

Mr. John L. Gust, for Appellees.

ROSS, J.—This is an injunction proceeding brought by the appellant Farmer, as a resident property owner and taxpayer of the assessment district hereafter described of the city of Yuma, to restrain appellee Dahl, street superintendent, from executing a paving contract theretofore awarded to appellee

O. & C. Construction Company by the city council of the city, and is based upon certain alleged infirmities in the preliminary statutory proceedings of the council leading up to and antedating the letting of the contract.

Appellant the J. W. Dorrington Investment Company intervened in the suit, and in its complaint sets forth practically the same grounds as the appellant Farmer. Upon the trial before the court, the temporary restraining order issued at the instance of appellant Farmer was dissolved and judgment dismissing the complaints of both the appellants was entered.

(1) It is insisted by appellants that the city council abandoned the proposed work and thereby lost jurisdiction. This contention is based upon the following condition of the record: On March 27, 1917, as provided in paragraphs 1955 and 1956, chapter 3, title 7 of the Civil Code, entitled ''Improvements of Streets,'' the city council passed and thereafter caused to be published a resolution of intention to pave and otherwise improve certain portions of First Street and Second Avenue of said city of Yuma, as one improvement, to be constructed under one contract and charged against an assessment district therein described by lots, blocks, and streets. No protests against said work, nor objections as to the extent of the proposed assessment district, were filed with the city clerk within the time as provided in paragraph 1957, or at all, whereupon the city council assumed jurisdiction as therein granted, and ''by resolution, ordered the improvement described in the resolution of intention to be done.'' The superintendent of streets advertised for bids for the proposed improvement and on May 3, 1917, a contract to do the work was awarded by the council to the O. & C. Construction Company. A protest against the execution of the contract was filed with the council within the time provided in paragraph 1960, alleging that the call for bids was not published the required length of time, and that the opening of bids and the award were premature. At the same time another paper was presented to the council signed by a large number of property owners liable to assessment for the proposed work, asking the council to abandon the work and proceedings. On May 15, 1917, the council had a hearing upon the protest, and at the same time considered the petition asking that the work be abandoned. The action at this meeting is one of the bones

of contention. It is the contention of the appellants that a motion was made and unanimously carried abandoning the work, and they rely upon the motion as entered by the clerk as sustaining their position. However, at the next regular meeting of the council on May 22d, and before the minutes of May 15th were approved by the council and signed by the mayor, they were amended to show that the work was not abandoned, but that the bid of the O. & C. Construction Company was rejected and its cash deposit returned.

(2) It is contended by appellants that the established grade on First Street between Madison Avenue and Second Avenue would be materially changed by the proposed work, to the damage of the abutting property owners, and that before this can be done, the damages must first be ascertained and paid.

(3) Objection is made to the proceedings because the resolution of intention included the improvement of a street in front of a piece of land owned by the city of Yuma, without including in the assessment district the abutting property so belonging to the city.

(4) Appellants contend that the proceedings are not legal, in that certain lands belonging to the city and being used for, and dedicated to, a public use, were included in the assessment district without the city having funds in its treasury to pay for the improvement properly chargeable to the city.

(5) Lastly, it is contended that, inasmuch as the calls for bids specified that the improvement should be of a bitulithic surfacing known as "Warrenite," a patented process owned and controlled by Warren Bros. Company, it prevented competition and gave to the O. & C. Construction Company a monopoly in the bids, contrary to law.

After the city council had rejected the first bid of the O. & C. Construction Company, the proposed work was again advertised and the bid of the O. & C. Construction Company again accepted. Notice of the award of the contract to the O. & C. Construction Company was again published as required by paragraph 1960, and within the 15 days allowed by law appellant Farmer again protested, setting forth as ground of protest the five objections heretofore enumerated. We will consider the points made by the appellants in the order above named.

It is provided by the city charter that when local improvements are made, "the laws of the state of Arizona in force

at the time of the improvement shall govern and control, and all proceedings shall be in conformity therewith." Section 19, art. 3, City Charter. Chapter 13, title 7, *supra,* vests incorporated cities, towns, and villages "with power to make local improvements by special assessments or by special taxation of property benefited." Section 6, art. 9, Constitution.

First. The trial court, in its findings, found that the city council, by its action at its meeting of May 15th, did not abandon the whole proceedings for the work contemplated in its resolution of intention, and that its action on the 22d of May, in amending the minutes before they were approved, was lawful. Section 1, article 11, of the City Charter, among other things, provides: "He [the mayor] shall sign the minutes of its meetings after they have been entered in the minutes by the city recorder and approved by the council." The minutes of May 15th, as recorded by the clerk of the city council, were not approved by the council, nor signed by the mayor.

Section 6 of article 10 of the charter provides: "The council shall determine its own rules of procedure." No irregularity in the manner pursued in amending the minutes is shown. For aught that appears, the course followed by the council was that prescribed by its rules for the conduct of its business. The record is that the motion of May 15th was an oral one and entered by the clerk according to his understanding. The council, finding it incorrect, according to the understanding of its members, at the next regular meeting and before it was approved and signed by the mayor, corrected it to conform to the motion as made and passed by the council. As a fact, after hearing evidence upon the question, the court found that the council by its resolution of May 15th only intended to reject the bid theretofore awarded to the O. & C. Construction Company, because the publication for bids was not in accordance with law, and the bids were prematurely opened. If the action of the city council was limited to a rejection of the bids as found by the court and as expressed in its amended minutes (and we think we are bound by these records), it must follow that the council did not lose jurisdiction as contended.

Second. If it be conceded, as contended by appellants that the grade on First Street between Madison Avenue and Second Avenue had theretofore been established, and that the

proposed work would materially change such grade, whatever might be the rights of abutting property owners affected by such change of grade, the appellants may not complain for the reason that it is not shown that either of them owns any property facing on First Street at such point. In other words, they fail to show that they will be in any way damaged even if a change of grade is effected.

Third. The third point made is to the effect that a piece of land belonging to the city and used in the performance of a public function was excluded from the assessment district, notwithstanding it faced upon and was benefited by the proposed improvements. This feature is expressly taken care of by paragraph. 1958, wherein it is provided that in such circumstance "the total expense of all work done shall be assessed on the remaining lots . . . lying within the limits of the assessment district, without regard to such omitted lots, pieces or parcels of land."

Fourth. The contention that the city had no funds in its treasury available to apply to the payment of its proportion of the assessment by reason of a piece or parcel of its land used in the performance of a public function being within the assessment district, we do not think is well taken.

The appellants rely upon section 9 of article 10 of the City Charter, which provides:

"The council shall not create, audit, allow or permit to accrue any debt or liability in excess of the available money in the treasury that may be legally apportioned and appropriated for such purpose, except in the manner provided in this charter for incurring indebtedness. No money shall be drawn or evidence of indebtedness be issued unless there be at the time sufficient money in the treasury legally applicable to the payment of the same except as in this chapter provided."

Doubtless this language is broad enough to forbid the city council from incurring the proposed debt, providing it was intended to cover debts or obligations arising out of contracts to improve the city's streets. We think it clear that it was not so intended because, in subdivision 7 of section 7 of said article 10, this language is employed:

"No action providing for any specific improvement, for the appropriation or expenditure of any public money, except a sum less than five hundred (500) dollars, for the appropria-

tion, acquisition, sale or lease of public property; for the levying of any tax or assessment; for the granting of any franchise; for establishing or changing fire limits; or for the imposing of any penalty, shall be taken except by ordinance; provided that such exceptions be observed as may be called for in cases where the council takes action in pursuance of a general law of the state.''

Everything that the council did in the matter of paving First Street and Second Avenue was done ''in pursuance of a general law of the state,'' to wit, chapter 13, title 7, *supra.* The city council, having ordered the work to be done, the general law creates the liability in the following language:

''In the event that the legislative body shall, in such resolution of intention, declare that said lots, pieces or parcels of land so owned as aforesaid [that is, by the city], or any of them, shall be included in the assessment, or in the event that no declaration is made respecting such lots, pieces or parcels of land, then said municipality shall be liable for such sum or sums as thereafter may be assessed against such lots, pieces or parcels of land so owned and used, which shall be payable by the said city out of the general fund, unless the legislative body shall in its resolution of intention designate another fund.'' Paragraph 1958.

Under the improvement statute, the obligation to pay for specific public improvements does not accrue until after the work under the contract has been completed and accepted. The general law does not make it a condition that the city shall have on hand funds to meet this obligation at the time of incurring it. It simply requires that, when it is paid, it shall be paid out of the general fund, unless otherwise designated in the resolution of intention.

Fifth. Under the facts of this case, the specification that the work should be of the ''Warrenite'' patented paving does not stifle competition and render the proposed contract fraudulent and void. In the first place, it is provided in subdivision 4, paragraph 1974, that patented material may be employed in any improvement or work done under that chapter. It is further shown that this specification does not stifle competition, for the reason that Warren Bros. Company, owners of the patented pavement called for, had filed a license agreement with the city recorder of the city of Yuma, by which they agreed to furnish the patented pavement to all

bidders on equal terms. If all bidders could, upon equal terms, obtain from the Warren Bros. Company the patented material called for in the specifications, that is, a showing that the element of competition was present and, at the same time, the city was enabled to secure that kind of pavement, in its opinion, best suited to its climatic conditions. *Sherrett* v. *City of Portland*, 75 Or. 449, 147 Pac. 382.

We conclude that the assignments are without merit, and the judgment is therefore affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

---

On the liability of a municipal corporation for injury to abutting property from changing the grade of a street under a constitutional provision against "damaging" private property for public use without compensation, see notes in 36 L. R. A. (N. S.) 1194; L. R. A. 1915A, 382.

On the liability to local assessments for benefits of property exempt from general taxation, especially, rule regarding public property, see notes in 35 L. R. A. 38; 18 L. R. A. (N. S.) 453.