## THOMAS S. HOUSE v. FREDRIKKA HANSON AND ANOTHER.[1]

November 4, 1955.

No. 36,641.

*Samuel Saliterman* and *James P. Larkin,* for appellants.

*Schermer & Gensler* and *Marlon O. Haugen,* for respondent.

[1]Reported in 72 N. W. (2d) 874.

MATSON, JUSTICE.

Appeal from an order which denies defendants' motion for summary judgment on the pleadings and which certifies that the question presented by the motion is important and doubtful.

We are concerned with the appealability of the aforesaid order under M. S. A. 605.09 (4) *as the alleged equivalent of an order overruling a demurrer under our former practice* and also with the question whether under Rules of Civil Procedure, Rule 13.01, a defendant in a tort action arising out of an automobile collision must interpose as a counterclaim any claims he has against the plaintiff which arise out of the same collision or be forever barred from asserting them in another suit.

Plaintiff brought this action to recover property damages sustained in a collision between his car and one owned by defendant Fredrikka Hanson and driven by defendant Darlene Hanson. In their answer defendants allege as a defense that plaintiff's action is barred because in two prior actions arising out of the same collision, brought by the defendants against the plaintiff, he had failed to counterclaim for his damages and each of such former actions, upon stipulation of the parties, had been dismissed with prejudice. Defendants have moved herein for a summary judgment in their favor upon the ground that the pleadings and the entire file show there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law.

Upon the undisputed facts established by the pleadings, supporting affidavits, and the entire file, which facts are otherwise admitted by the parties, the motion for summary judgment presented only a question of law as to whether defendants' tort claim is a compulsory counterclaim under Rule 13.01 which is barred if not asserted in the original tort action. The trial court denied defendants' motion and in its order of denial treated the motion as if it were the equivalent of a demurrer under our former practice and certified, pursuant to § 605.09 (4), that it presented an important and doubtful question.

Section 605.09 (4) provides that an appeal to the Supreme Court may be taken from an order overruling a demurrer if the

trial court certifies, as part of its order, that the question is important and doubtful. Although the new rules of civil procedure have expressly superseded many statutes,[2] the above section was not one of them. Despite the fact that § 605.09(4) is still in full force and effect, Rules of Civil Procedure, Rule 7.01, provides:

"* * * Demurrers, pleas, and exceptions for insufficiency of a pleading shall not be used."

An examination of the advisory committee's notes on Rule 7.01, Minnesota Rules of Civil Procedure, Tentative Draft, p. 41, indicates that the primary purpose of abolishing demurrers, pleas, and exceptions was essentially one to effect a change of terminology or form and not of function.[3] Under Rule 7.01 these former labels have disappeared in the interest of simplification but the functions originally described by such labels remain to be exercised by answer or by a simple motion. The advisory committee's notes on Rule 7.01 read (Minnesota Rules of Civil Procedure, Tentative Draft, p. 42):

"This rule follows Federal Rule 7(c) in abolishing demurrers, pleas and exceptions for insufficiency of a pleading. Some question was raised about the words 'pleas' and 'exceptions' since some special proceedings under our statutes denominate certain appearances or pleadings as pleas or exceptions. The same question arose under the Federal rules and so the rule was noted with the following: 'All statutes which use the words "petition," "bill of complaint," "plea," "*demurrer*," and other such terminology are modified *in form* by this rule.'

"It seems desirable to eliminate such technical words used at common law and equity and thus eliminate all technical distinctions no longer in line with the better practice. Such pleadings now will be advanced by means of the complaint, answer, or *by motion*." (Italics supplied.)

---

[2]See, 3 Youngquist & Blacik, Minnesota Rules Practice, Appendix B(2), pp. 521 to 524.

[3]See, 41 Am. Jur., Pleading, § 204; Simkins, Federal Practice (3 ed.) § 212.

Aside from the advantage of simplification, no purpose would have been served by preserving demurrers, pleas, and exceptions for insufficiency of a pleading since their respective basic functions have been implemented by Rule 12.02 which provides that every defense in law or fact, to a claim for relief in any pleading, shall be asserted either (1) in the answer or responsive pleading or (2) by a motion for failure to state a claim upon which relief can be granted.[4] Rule 12.02 further provides that:

"* * * If, on a motion asserting the defense that the pleading fails to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court,* the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." (Italics supplied.)

Under Rule 56 a motion for summary judgment is not confined, as under our former demurrer practice, to the pleadings, and may be made with or without supporting affidavits. In 3 Youngquist & Blacik, Minnesota Rules Practice, Authors' Comments to Rule 56.02, p. 85, it has been pointed out that:

"A defending party is not required to serve his responsive pleading before moving for summary judgment. He may make the motion at any time, setting out his defenses by affidavit, and thus effect a speedy termination of the action if no genuine issue exists as to any fact or facts pertaining to a defense that would defeat the claim.

"The defendant party may likewise, before pleading, test the sufficiency of the claim by a motion for dismissal for failure to state a claim upon which relief can be granted. If matters outside the pleading are presented to the court on the motion and not excluded, the motion is to be treated as one for summary judgment testing the sufficiency of the claim in fact. Rule 12.02."

It is apparent that a motion for summary judgment is much broader in its application than the old demurrer in that it per-

---

[4]See, Simkins, Federal Practice (3 ed.) § 212.

mits a consideration of matters outside the pleadings. Rule 56.03 provides that:

"* * * The judgment sought shall be rendered forthwith *if the pleadings, depositions, and admissions on file, together with the affidavits,* if any, *show that there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." (Italics supplied.)

Despite such broader application, there is obviously a basic functional similarity between it and the old demurrer as a procedural device for entering judgment purely as a matter of law if the pleadings fail to state a claim upon which relief can be granted. In fact, the former demurrer operated as a motion for judgment on the pleadings. Branton v. McLaughlin, 109 Minn. 244, 246, 123 N. W. 808, 809.

It is true, of course, that a demurrer did not of itself raise the affirmative defense that a former judgment was *res judicata.* Mitchell v. City of St. Paul, 228 Minn. 64, 36 N. W. (2d) 132. We are not here, however, concerned with the absolute bar which arises under the doctrine of *res judicata* from a judgment entered as a result of an actual litigation of the issues between the parties. We are instead confronted with a bar created by rule (Rule 13.01) which logically is in the nature of an estoppel arising from the culpable conduct of a litigant in failing to assert a proper counterclaim.[5] Regardless of its nature the bar created under Rule 13.01 is an affirmative defense which could not have been asserted under demurrer.[6] Although our former decisions on demurrers may be helpful in guid-

---

[5]Although the bar interposed by Rule 13.01, which prevents a party from bringing an action on a claim which he should have asserted in a prior action as a counterclaim, has often been likened to *res judicata,* such a reference appears to be a misapplication of this ancient doctrine. See, 2 Black, Judgments (2 ed.) §§ 500, 501, 503, and 725; Duchess of Kingston, 20 How. St. Tr. 355, 2 Smith Lead. Cas. 424; 2 Freeman, Judgments (5 ed.) §§ 626, 627; Restatement, Judgments, pp. 159, 160, and § 58; 38 Minn. L. Rev. 428, *et seq.*

[6]We have not overlooked that under the new rules (Rule 8.03), in pleading to a preceding pleading, a party must set forth his affirmative defenses.

ing the determination of motions to dismiss (Rule 12.02) or motions for summary judgment (Rule 56), they must be reexamined in the light of the purposes of the new rules.[7] The procedural simplification established by the new rules must not be frittered away by encumbering them with unnecessary technical distinctions inherited from the older procedures. Despite the fact that unlike a demurrer a motion for a summary judgment may consider matters outside the pleadings and raise affirmative defenses, the functional purpose of determining purely a question of law upon genuinely undisputed facts is the same under both procedures. In the light of this functional similarity between a demurrer and a motion for a summary judgment in determining whether a litigant is entitled to judgment purely as a matter of law, we hold that an order overruling the latter, when the court in its order certifies that the question of law presented by such motion is important and doubtful, may be appealed to the Supreme Court under § 605.09(4). Procedural changes which merely substitute new labels for the products of the judicial process, without changing their essential nature, neither repeal nor circumvent the grounds of review given to a litigant under § 605.09(4).

We come to the issue of whether under Rule 13.01 a defendant in an action for damages arising out of an automobile collision must assert as a counterclaim any claim he has against the plaintiff which arises out of the same collision or be forever barred from asserting it in another separate action after the first action has been compromised and dismissed with prejudice. Subject to certain limitations[8] not here involved, Rule 13.01 provides that a pleading shall state as a counterclaim any claim which the pleader has against any opposing party if it arises out of the *transaction* that is the subject of the opposing party's claim. Specifically, does the word *transaction* include personal injury and property damage claims in tort?

---

[7]Rules of Civil Procedure, Rule 1; 1 Youngquist & Blacik, Minnesota Rules Practice, p. 310.

[8]See Rule 13.01 for its complete wording; see, also, 1 Youngquist & Blacik, Minnesota Rules Practice, pp. 428, 429, and Minnesota Rules of Civil Procedure, Tentative Draft, p. 72.

The Supreme Court's advisory committee, hereinafter called the committee, which drafted the new rules, first submitted a tentative draft wherein Rule 13.01 followed the wording of Federal Rule 13(a) which refers to counterclaims arising out of the same *transaction or occurrence*. The committee's notes show that many lawyers vigorously opposed the inclusion of the word *occurrence* for the very reason that it was thought to be so broad in meaning as to make tort counterclaims compulsory.[9] After further consideration the committee revised the tentative draft of Rule 13.01 by substituting for the words "transaction or occurrence" the words "contract or transaction." In making this change the committee said:

"The Committee fears that compulsory counterclaims in personal injury and other tort actions may work a hardship in cases where, for instance, the defendant's injury is presently unknown or where he is not represented by an attorney who appears primarily for him, and suggests that the compulsion be limited to counterclaims arising out of the 'contract or transaction' which is the subject of the opposing party's claim. The phrase is taken from sec. 544.05 which permits, but does not compel, such counterclaims." The Bench and Bar of Minnesota, Vol. 7, No. 9, September 1950, p. 18.[10]

When the committee's final report was submitted and an open hearing was held before this court, Rule 13.01 was thoroughly discussed with emphasis upon the reason for the deletion of the word "occurrence." A majority of the present court participated in the judicial act of finally adopting these new rules. Consistent with the committee's recommendations, Rule 13.01 was approved by this court with the express understanding and intent that the omission therefrom of the word "occurrence" would insure that tort counterclaims would not be compulsory.[11] We hold therefore that the word "transaction" as used in Rule 13.01 does not embrace claims in tort

[9]See Judge Leslie L. Anderson's comment in 39 Minn. L. Rev. 465, 468, 469.

[10]For other changes not involved here, see *Id.* Vol. 7, No. 10, October 1950, pp. 17 to 19.

[11]Before adoption the word *contract* was struck out as being redundant by order dated December 6, 1951. See, 233 Minn. vii.

and that therefore the failure of a defendant to assert as a counter-claim any claim he has against the plaintiff does not estop him from asserting such claim in an independent action against the plaintiff. The words of a court rule, like those of a statute, must be taken and construed in the sense in which they were understood and intended at the time the rule was promulgated. Any other principle of construction would undermine confidence in the court's rule-making power.

We have not overlooked Mayberry v. N. P. Ry. Co. 100 Minn. 79, 84, 110 N. W. 356, 358, 12 L.R.A.(N.S.) 675, relating to the joinder of claims under M. S. A. 1949, § 544.27, wherein this court in 1907 construed the word *transaction* to embrace not only contractual relations but also any occurrences whether they be in the nature of tort or otherwise. This decision (and other cases relating to counterclaims under M. S. A. 1949, § 544.05) was not considered when Rule 13.01 was adopted and cannot now be used to modify the understood and intended meaning of that rule.[12] Likewise, we have not overlooked that the word *transaction* as used in the old Equity Rule 30, which was the progenitor of the present Federal Rule 13(a), has been construed to include torts.[13] In the light of our decision, no purpose will be served in reviewing decisions adopting a different construction.[14] Much can be said in favor of making counterclaims in tort compulsory, but if that is to be done it should be accomplished by an amendment to Rule 13.01 and not by a process of judicial construction which ignores the meaning intended when the rule was adopted.

The order of the trial court is affirmed.

Affirmed.

[12]For a discussion of these cases, see 1 Youngquist & Blacik, Minnesota Rules Practice, p. 428.

[13]See, Moore v. New York Cotton Exch. 270 U. S. 593, 46 S. Ct. 367, 70 L. ed. 750; Williams v. Robinson (D. D. C.) 3 Fed. Rules Serv. 13a.11, Case 1, 1 F. R. D. 211, 213.

[14]See, 36 Minn. L. Rev. 580, 588, 591; 38 Minn. L. Rev. 423, 447 to 450; 39 Minn. L. Rev. 465, 468, 469.